UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
TIMOTHY O'CONNELL,

                Plaintiff,                       **MEMORANDUM & ORDER**

            - against -                   Docket No. 15 CV 6512 (RJD) (RLM)

UNITED STATES OF AMERICA, MICHAEL
ASARO, SEAN CASEY, PAUL SCHOEMAN,
JAMES MCMAHON, JON E. GREEN, and
UNKNOWN FEDERAL AGENT JOHN DOES 1-10,

                Defendants.
------------------------------------------------------- x
DEARIE, District Judge

      In a series of prosecutions, referred to as the "squawk box" cases, numerous financial advisers, including Plaintiff Timothy O'Connell, were charged with insider trading and related offenses. O'Connell's claims stem from the government's withholding exculpatory material from him and his co-defendants. He brings claims for malicious prosecution, negligence and gross negligence against the United States and claims for violation of due process and malicious prosecution against five Assistant United States Attorneys and ten unknown federal agents. Defendants move to dismiss the Amended Complaint (hereinafter "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion is granted.

BACKGROUND

      The indictment charged O'Connell and his five co-defendants with securities fraud for purposefully allowing outside day traders to listen to confidential information broadcast over "squawk boxes"—intercom speakers used in investment banks and stock brokerage houses to facilitate internal communications between analysts, traders, and brokers. The government's case

depended, in part, on its proving that the information shared over the squawk boxes was in fact confidential.

The Assistant United States Attorneys prosecuting the case worked closely with the Securities and Exchange Commission ("SEC") to develop the charges against O'Connell and his co-defendants. Beginning in December 2004, the SEC deposed numerous witnesses, some of whom testified that the information broadcast over the squawk boxes was *not* confidential. The SEC provided the transcripts of these depositions to the prosecutors before trial and alerted the prosecutors that at least one, and potentially several, of the transcripts might contain exculpatory material. The prosecutors, however, elected not to share the transcripts with O'Connell and his co-defendants.

O'Connell and his co-defendants were initially tried in 2007. O'Connell was convicted of witness tampering and making a false statement[1] and acquitted on thirty-eight counts of securities fraud and related offenses. The jury could not reach a decision on the related conspiracy charge.

Defendants retried O'Connell and his co-defendants on the conspiracy count in 2009. The second trial team apparently chose to rely on the first team's decision not to disclose the SEC transcripts. O'Connell was convicted after a three-week trial and sentenced to a period of home confinement.

In May 2009, the SEC initiated administrative proceedings against one of O'Connell's co-defendants. In connection with those proceedings, the SEC disclosed the deposition transcripts in December 2009. O'Connell and his co-defendants moved for a new trial in

---

[1] O'Connell appealed his false statement conviction, which the Second Circuit vacated. See United States v. Mahaffy, 285 F. App'x 797 (2d Cir. 2008). The count was later dismissed.

2

February 2010, arguing that the transcripts included Brady material that was withheld in the criminal proceedings. The trial court criticized the government's conduct, but concluded that the jury would not have reached a different result even if the transcripts had been disclosed. See United States v. Mahaffy, No. 05-CR-613(JG), 2010 WL 2925952 (E.D.N.Y. July 21, 2010), rev'd, 693 F.3d 113 (2d Cir. 2012).

The Second Circuit reversed, concluding that the government's failure to disclose portions of the transcripts violated Brady and undermined the court's confidence in the jury's verdict. See United States v. Mahaffy, 693 F.3d 113, 119 (2d Cir. 2012). Following remand, O'Connell entered into a deferred prosecution agreement with the government. In December 2013, at the end of the agreed-upon six month deferral—which was successfully completed by O'Connell—the government moved to dismiss the indictment.

On November 12, 2014, O'Connell filed a notice of claim against the United States, as required under the Federal Tort Claims Act ("FTCA"). See 28 U.S.C. § 2401(b). A year later, O'Connell commenced this action. The Complaint brings claims for malicious prosecution, negligence, and gross negligence against the United States pursuant to the FTCA and claims for violation of due process and malicious prosecution against the prosecuting Assistant United States Attorneys ("AUSA defendants") pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

## DISCUSSION

Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), citing the absolute immunity of the AUSA defendants and the sovereign immunity of

the United States. Defendants also assert that the claims are barred by the statute of limitations and that O'Connell fails to state a claim.[2]

### A. Claims Against AUSA Defendants

The government contends that the claims against the AUSA defendants are barred by the absolute immunity of federal prosecutors acting in an advocacy role. The Court agrees. Because the AUSA defendants were acting in their capacities as advocates when they decided not to disclose the SEC transcripts, they are absolutely immune from civil liability.

"The nature of a prosecutor's immunity depends on the capacity in which the prosecutor acts at the time of the alleged misconduct. Actions taken as an advocate enjoy absolute immunity . . . while actions taken as an investigator enjoy only qualified immunity." Zahrey v. Coffey, 221 F.3d 342, 346 (2d Cir. 2000) (citations omitted). "This immunity law applies to Bivens actions as well as actions under section 1983." Id. "In applying this 'functional approach' to claims of absolute immunity, courts focus on 'the nature of the function performed, not the identity of the actor who performed it.'" Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993)). Prosecutors are only "entitled to absolute immunity for that conduct 'intimately associated with the judicial phase of the criminal process.'" Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). Accordingly, prosecutors are "absolutely immune from civil liability for initiating a prosecution and presenting the case at trial." Id. They are "also immune for conduct in preparing for those functions; for example, evaluating and

---

[2] Defendants offer compelling arguments that the due process and negligence claims are time barred, and that the plaintiff fails to state a malicious prosecution claim, along with several other arguments in favor of dismissal. However, because the immunity issues are dispositive with respect to all claims, the Court does not reach defendants' other arguments.

4

organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged." Id. (citations omitted). Thus, the immunity covers "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994).

O'Connell asserts that the AUSA defendants' failure to disclose the transcripts and their decision to prosecute O'Connell anyway was a "deliberate abuse of governmental power," that violated O'Connell's due process rights. Compl. ¶ 110. While O'Connell is correct that the AUSA defendants failed to fulfill their Brady obligations, these actions, no matter how one characterizes them, cannot subject the AUSA defendants to civil liability. The AUSA defendants were acting as advocates when, for whatever reason, they decided not to disclose the potentially exculpatory material. This occurred during the judicial phase of the criminal process, and therefore entitles the AUSA defendants to absolute immunity on the due process claim. See Hill, 45 F.3d at 662 ("As to [defendant's] failure to turn over Brady material, . . . this omission occurred after the prosecutorial phase of the case had begun and therefore is protected as a discretionary advocacy function."); Collins v. City of New York, 923 F. Supp. 2d 462, 475 (E.D.N.Y. 2013) ("'Brady and Giglio duties are functionally prosecutorial—they are intimately related to the judicial phase of the criminal process.'" (quoting Fields v. Wharrie, 672 F.3d 505, 513 (7th Cir. 2012)).

The AUSA defendants are immune notwithstanding O'Connell's assertion that they "worked closely" with the SEC "in developing the charges" against O'Connell and the other defendants. These actions, O'Connell argues, show that the AUSA defendants were at times acting as investigators and not advocates, and they accordingly have only qualified immunity. Compl. ¶¶ 22, 118. But the Second Circuit has held that even "investigative acts reasonably

5

related to decisions whether or not to begin or to carry on a particular criminal prosecution, or to defend a conviction, are shielded by absolute immunity when done by prosecutors." Giraldo v. Kessler, 694 F.3d 161, 166 (2d Cir. 2012). The allegations in the Complaint do not support the argument that the prosecutors were acting outside of their advocacy role, even during the investigation. Accordingly, the due process claim is dismissed.

The malicious prosecution claim against the AUSA defendants fares no better. Indeed, the Second Circuit has unequivocally stated that prosecutors are entitled to absolute immunity from malicious prosecution claims. See Hill, 45 F.3d at 661 ("With respect to the third [claim], malicious prosecution, it has long been settled that prosecutors are entitled to immunity from § 1983 liability for initiating a prosecution." (citing Imbler, 424 U.S. at 431)). Accordingly, the claims against the AUSA defendants are dismissed.

*B. Claims Against the United States*

Despite the eventual outcome of the prosecution, O'Connell nevertheless brings similar claims against the United States pursuant to the FTCA. These claims are barred by the sovereign immunity of the United States because of the so-called "discretionary function" exception to the FTCA.

The FTCA "'constitutes a limited waiver by the United States of its sovereign immunity and allows for a tort suit against the United States under specified circumstances.'" Liranzo v. United States, 690 F.3d 78, 85 (2d Cir. 2012) (quoting Hamm v. United States, 483 F.3d 135, 137 (2d Cir. 2007)). The discretionary function exception to the FTCA protects the United States from liability for any claim based upon "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "The

6

discretionary function exception is 'a form of retained sovereign immunity. As a result, the [FTCA's] waiver of federal sovereign immunity does not encompass actions based upon the performance of, or failure to perform, discretionary functions.'" Reichhart v. United States, 408 F. App'x 441, 443 (2d Cir. 2011) (quoting In re World Trade Ctr. Disaster Site Litig., 521 F.3d 169, 190 (2d Cir. 2008)). "'Because the FTCA is structured as a grant of subject matter jurisdiction to the federal courts, a finding that the discretionary function exception applies is tantamount to holding that the court lacks jurisdiction.'" Id. (quoting Caban v. United States, 671 F.2d 1230, 1235 n.5 (2d Cir. 1982)).

O'Connell bases his malicious prosecution claim against the United States on his allegation that the AUSA defendants "knew or should have known that they have no basis to prosecute [him]," Compl. ¶ 83, but that they "continued to prosecute [O'Connell] in the Criminal Action out of malice." Id. ¶ 85. However, since the AUSA defendants were acting in a clearly discretionary role throughout the investigation and prosecution, the malicious prosecution claim is barred. "Prosecutorial decisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception." Gray v. Bell, 712 F.2d 490, 513 (D.C. Cir. 1983). District courts in this Circuit routinely dismiss similar malicious prosecution claims against the United States. See, e.g., Petitio v. Hill, No. 04–CV–4493, 2007 WL 1016890, at *14 (E.D.N.Y. Mar. 26, 2007) ("The 'discretionary function exception' to the Government's waiver of sovereign immunity under the FTCA further precludes plaintiff's tort claims insofar as they arise from a prosecutor's decision to indict and prosecute."). The exception also encompasses a prosecutor's decision to prosecute "even if that decision constitutes an abuse of prosecutorial discretion." Wang v. United

7

States, No. 01 CIV. 1326, 2001 WL 1297793, at *4 (S.D.N.Y. Oct. 25, 2001) aff'd, 61 F. App'x 757 (2d Cir. 2003). Accordingly, the United States retains its sovereign immunity and the Court does not have jurisdiction to hear this claim.

The negligence and gross negligence claims against the United States for failure to disclose Brady material are barred for the same reason. As the D.C. Circuit observed, "[d]eciding whether to prosecute . . . identifying the evidence to submit to the grand jury and determining whether information is 'exculpatory' and 'material' and therefore must be disclosed pursuant to a Brady request are actions that require the prosecutor to exercise his professional judgment. They are therefore quintessentially discretionary." Moore v. Valder, 65 F.3d 189, 197 (D.C. Cir. 1995). Because O'Connell's negligence and gross negligence claims are based on the AUSA defendants' failure to disclose the Brady material, these claims are also barred by the discretionary function exception.[3]

O'Connell attempts to rescue his FTCA claims by again arguing that the AUSA defendants participated in the investigatory phase of the case, and that the United States therefore does not have immunity. But the investigative/advocacy distinction is not relevant in the context the discretionary function exception to the FTCA. Rather, "[w]here an allegation of improper

---

[3] In July 2016, the D.C. Circuit decided Loumiet v. United States, 828 F.3d 935 (D.C. Cir. 2016), which held that "the FTCA's discretionary-function exception does not provide a blanket immunity against tortious conduct that a plaintiff plausibly alleges also flouts a constitutional prescription." Id. at 943. Loumiet took care to emphasize that it did not overturn Moore or Gray, but rather addressed the "novel" question of whether the discretionary function exception shielded the United States from tort liability even in cases where the government allegedly exceeded a constitutional mandate. Id. No such question is presented here. Plaintiff alleges state tort claims for malicious prosecution, negligence, and gross negligence against the United States based upon the decisions made by prosecutors. Moore specifically held that initiating a prosecution and determining whether to disclose exculpatory material under Brady were decisions that were "quintessentially discretionary," Moore, 65 F.3d at 197, a finding that Loumiet did not dispute. Accordingly, Loumiet does not alter the Court's determination that the FTCA bars O'Connell's claims.

8

investigatory conduct is tied to the decision to prosecute and the presentation of evidence to the grand jury, the discretionary function exception [still] precludes suit against the government." In re Grand Jury Minutes in U.S. v. Tam, No. 96 CV 2810, 1997 WL 21369, at *3 (E.D.N.Y. Jan. 9, 1997); see also Valdez v. United States, No. 08 CIV 4424 (RPP), 2009 WL 2365549, at *7 (S.D.N.Y. July 31, 2009) ("[D]ecisions about how to conduct investigations fall squarely within the discretionary function exception.").

Consequently, the government has not waived its sovereign immunity for any of O'Connell's FTCA claims and this Court is without jurisdiction to hear them.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is granted.

SO ORDERED.

Dated: Brooklyn, New York
       August 24, 2017

s/ RJD
_____
RAYMOND J. DEARIE
United States District Judge